IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT DAVIS,               )
                            )
        Petitioner,          )
                            )
    v.                      )    No. 04 C 7822
                            )
DON HULICK,                 )
                            )
        Respondent.          )

**MEMORANDUM OPINION AND ORDER**

Robert Davis has brought a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Davis is incarcerated at the Menard Correctional Center in Menard, Illinois where Don Hulick is the warden.[1] For the following reasons, I deny the petition.

I.

On November 9, 2000, following a bench trial in the Circuit Court of Cook County, petitioner was convicted of six counts of aggravated criminal sexual assault, one count of aggravated kidnapping, one count of aggravated battery, one count of armed violence, and one count of unlawful restraint. His motion for a new trial was denied. He was sentenced to fifty-four years'

---

[1]The petition originally named Charles Hinsley as respondent. The answer indicates that, at the time of that filing, Alan Uchtman was the warden and requests that Uchtman be substituted as respondent under FED. R. CIV. P. 25(d)(1) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Subsequently, a notice was filed indicating that Hulick is the current warden and requesting that he be substituted as respondent. Accordingly, Hulick is now substituted as the respondent.

imprisonment.² His motion to reconsider the sentence was denied. Petitioner then appealed to the Appellate Court of Illinois arguing that (1) the trial court erred in applying the Illinois "rape shield" statute to preclude defense counsel from cross-examining the victim about a previous sexual assault complaint; (2) he was not proven guilty beyond a reasonable doubt; (3) the trial court erred in failing to investigate *sua sponte* defense counsel's alleged neglect and incompetence; and (4) the trial court erred in allowing a witness to testify to hearsay statements made by the victim to medical personnel. On March 12, 2003, the appellate court affirmed. *People v. Davis*, 337 Ill. App. 3d 977, 787 N.E.2d 212 (Ill. App. Ct. 2003). Petitioner filed a petition for rehearing, which was denied on April 9, 2003. On May 14, 2003, petitioner filed a Petition for Leave to Appeal ("PLA") to the Supreme Court of Illinois, arguing that (1) he was denied the constitutional right to confront witnesses against him where the rape shield statute was incorrectly applied to preclude cross-examination of the complaining witness about a prior false rape allegation; and (2) the trial and appellate courts improperly concluded that he was guilty by failing to treat the DNA evidence

---

²Petitioner was sentenced to nine years on each count of aggravated criminal sexual assault, to be served consecutively; and to six years for aggravated kidnaping, nine years for armed violence, five years for aggravated battery, and three years for unlawful restraint, to be served concurrently with the aggravated criminal sexual assault counts.

against his codefendant separately where the DNA evidence only implicated his codefendant and also raised problems with the victim's testimony. The Supreme Court of Illinois denied the PLA on October 7, 2003. *People v. Davis*, 205 Ill. 2d 601, 803 N.E.2d 488 (Ill. 2003).

Petitioner filed the instant petition[3] on December 3, 2004, claiming that (1) the trial court erred in applying the Illinois rape shield statute to preclude defense counsel from cross-examining the victim about a previous sexual assault complaint; (2) he was not proven guilty beyond a reasonable doubt; (3) the trial court erred in failing to investigate *sua sponte* defense counsel's alleged neglect and incompetence; (4) the trial judge erred in allowing a witness to testify to hearsay statements made by the victim to medical personnel; and (5) appellate counsel provided ineffective assistance by failing to present all issues raised on

---

[3] I give the petition a generous interpretation because it was prepared without the assistance of counsel. *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). I reviewed the documents submitted by respondent, which included the appellate court's opinion, the parties' briefs to the state appellate and supreme courts, and the state courts' orders. Respondent indicates that the entire record on appeal is maintained by the Clerk of the Circuit Court of Cook County, but transcripts were not submitted. I find a review of the transcripts is not necessary to resolve this petition. *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004).

direct appeal in the PLA.[4] On March 6, 2008, the case was reassigned to me.

The Appellate Court of Illinois, the last state court to issue a decision ruling on the merits of petitioner's claims,[5] found that (1) the trial court did not abuse its discretion in refusing to allow the cross-examination of the victim regarding a prior claim of sexual assault where no evidence was offered that it was made falsely and no motive was alleged for the victim to make a false complaint against Davis; (2) the evidence was sufficient to convict Davis where the judge found the victim's testimony to be credible and there was substantial corroborating evidence, the DNA evidence was consistent with the victim's account, and there was no evidence that Davis was wrongly convicted based on evidence inculpating his codefendant; (3) the trial court did not err in failing to inquire into defense counsel's effectiveness because the record did not show a "clear basis" for an allegation of ineffectiveness and the alleged errors, even if demonstrated, did not support an ineffective assistance claim; and (4) although certain statements were erroneously admitted, the error was harmless and the evidence

---

[4]Petitioner inconsistently asserts that the same issues raised before the appellate court were raised in the PLA and that grounds 2, 3, and 4 for the petition were not raised in the PLA because appellate counsel failed to do so. (*See* Pet. at 2, 6.)

[5]Under § 2254, courts must review the decision of the last state court to rule on the merits of petitioner's claim. *See Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2001)).

at trial was strongly in favor of conviction.  The appellate court reviewed witnesses' trial testimony, including the victim, Lakita H.; Regina Mathews, a registered nurse who was working in the emergency room and assessed the victim; police officers Lisa Locke and Vickie Dodd; and Charles Neal, the victim's boss at the time of the incident.  The appellate court also recounted that several stipulations were entered into evidence by the state.

The appellate court's recitation of the facts sets forth that, before trial, defense counsel moved *in limine* for permission to cross-examine the victim about a prior complaint regarding an alleged sexual assault one month prior to the incident in this case.  Defense counsel argued that the fact pattern in the prior incident was similar to the instant case and occurred exactly one month before.  The police pursued the prior matter for about six months, but then closed the case because they were unable to contact the victim at her address.  Defense counsel contended the prior incident was relevant because it showed a lack of credibility and a prior fabrication.  The court concluded that the rape shield statute applied to preclude defense counsel from questioning the victim about the prior incident.

The victim testified that, on October 4, 1998, she went to a liquor store to buy beer around 6:30 or 7:00 p.m. on her way home from work as a tow truck driver.  As she was walking into the store, and again as she was leaving, a man approached her and tried

5

to talk to her, but she ignored him.  She identified this man as Davis.  Later that evening, at about 8:00 p.m., the victim returned to the store to buy cigarettes.  When she left, she saw Davis and his codefendant, James Walker.  They approached her and said something about going to a party with them, she ignored them, and she drove home in her tow truck.  As she was locking the truck, the defendants approached her.  Davis poked her side with an object she believed was a gun and said they were going to a party.  Walker said "come on" and grabbed her arm.  They walked through a construction site, and Davis shook a bag containing urine onto the victim.

    The defendants pulled the victim's hood over her face and tied it tightly.  They went into a building where the defendants pushed the victim into an elevator and they went up.  The defendants shoved her into an abandoned apartment and pushed her onto a mattress in a bedroom. Throughout the night, the defendants and a third man repeatedly sexually assaulted her orally, rectally, and vaginally.  They also beat her with a baseball bat and their fists, and submerged her body in scalding water.  Eventually, the defendants told the victim to get dressed and they put the hood over her head again.  As they were leaving, she was able to see that the apartment number on the door was "15 something."

    When the victim went outside, she realized that it was the next morning.  The defendants threatened to kill her if she told

anyone about the incident. She started to walk home, but realized an unidentified man was following her. She saw her neighbor and told him to call the police. Her co-worker was sitting in his tow truck behind her tow truck, and she told him a man was following her. She got into her truck and she and her co-worker began driving around to look for the man. The victim called the police and other tow truck drivers on her truck radio. Then she spotted the defendants on 49th Street. At 51st Street, she backed into a car to get the police's attention. Several police cars and tow trucks came to the scene, and the victim was put into an ambulance. She saw the defendants through the ambulance window, and she became scared and screamed.

On cross-examination, the victim testified that the defendants offered her drugs at the apartment, which she refused. The defendants also offered her alcohol, which she drank. The victim denied using illegal drugs before the incident, but said she takes several prescription drugs. She did not remember telling detectives after the incident that she left her house for the store at 12:15 a.m. or 12:45 a.m. She was very hysterical at the hospital and did not remember what she told anyone. She remembered a condom was used at one time during the incident.

Mathews testified that the victim told her she had been raped. Mathews noticed that the victim had swelling on her face, and bruising and swelling on her shoulder, arm, hand, thigh, and hip.

7

Mathews testimony included statements the victim had told her about the events leading up to and during the attack. Mathews conducted a rape kit test on the victim, and a doctor performed vaginal and rectal examinations. Mathews sealed the rape kit and kept it in her presence until giving it to police. The victim told Mathews that she was not sure if the men used condoms. She also stated that she had smoked marijuana in the past. The victim also told Mathews that she left her home for the store around midnight.

Officer Locke testified that she was on patrol on October 5, 1998, and at approximately 8:40 a.m. she received a message indicating an assault and a person being followed. She went to 51st Street and King Drive and saw the victim in a tow truck. She was hysterical, screaming, and crying, saying that she caused an accident to get the police to respond. Officer Locke and Officer John Gregwar went to 4950 South State Street, apartment 1504, where they recovered a baseball bat and five condoms inside a garbage bag.

Officer Dodd testified that she spoke to the victim in the ambulance. The victim was very hysterical, trembling, and blurting out that she had been raped. When she saw the offenders through the window, she yelled and screamed and said that was them. In her report, Officer Dodd indicated the victim had been drinking, and recorded the time of the offense taking place between 12:30 a.m. to 8:00 a.m.

Neal testified that he received a radio communication from the victim on October 5, 1998 in which she sounded distraught and panicked. When Neal arrived at 51st Street and King Drive, the victim was very distraught and distressed, her face was swollen, she was crying, her clothes were partially ripped, and her face was wet and bloody.

The State entered several stipulations into evidence. No latent fingerprints suitable for comparison were found on the baseball bat. The vaginal and rectal swabs from the Vitullo kit and the five condoms contained semen. Sperm and non-sperm fractions from the victim and both of the defendants were found on the inside and outside of the condoms. Petitioner's DNA and the victim's DNA were present on portions of two of the condoms.

II.

The federal statute that governs petitions for writs of habeas corpus, 28 U.S.C. § 2254, provides a "highly deferential standard of review." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). This standard requires that I give state court decisions the benefit of the doubt, only intervening where a state court decisions is "objectively unreasonable." *Id.* at 24-27. Under the terms of § 2254, I may grant a petition for habeas corpus only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

9

Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceedings. 28 U.S.C. § 2254(d).

In addition to this deferential standard, I generally may only grant a petition for a writ of habeas corpus where "the applicant has exhausted the remedies available in the courts of the State" and where the applicant has not procedurally defaulted his claims. 28 U.S.C. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).[6] These limitations are intended to allow state courts a fair opportunity to hear and act on a petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). To avoid procedural default, a petitioner must, at minimum, "invok[e] one complete round of the State's established appellate review process" for each of his claims. *Id.* at 845. In Illinois, this means one full round of appeals up to and including the filing of a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 845-46; *see also Lewis*, 390 F.3d at 1025 (requiring a claim to be raised through one full round of appeals, either on direct appeal of petitioner's conviction or through post-conviction proceedings, to avoid procedural default).

III.

---

[6]Section 2254 also provides, however, that I may deny a writ of habeas corpus on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Respondent contends that the petition should be denied because (1) the claims that the trial court failed to investigate *sua sponte* trial counsel's neglect and incompetence (claim 3) and that the trial court erred in allowing the nurse to testify regarding hearsay statements made by the victim (claim 4) were procedurally defaulted because they were not raised in the PLA; (2) the claim that appellate counsel was ineffective for failing to raise certain arguments in the PLA (claim 5) fails to state a claim because there is no constitutional right to effective assistance of counsel for the PLA; (3) the trial court's alleged misapplication of the Illinois rape shield statute (claim 1) does not constitute a basis for habeas relief, or alternatively did not violate petitioner's Sixth Amendment right to confront witnesses against him; and (4) the appellate court properly evaluated the claim that the evidence was not sufficient to prove petitioner guilty beyond a reasonable doubt (claim 2). Respondent acknowledges that petitioner has exhausted his state court remedies because the statutory time for filing state court proceedings expired.[7] (Ans. at 4.)

---

[7]Respondent cites 725 ILL. COMP. STAT. 5/122-1(c), which governs post-conviction hearings. The statute provides that if a defendant's sentence is for other than death and no petition for certiorari was filed in the United States Supreme Court, no proceedings shall be commenced more than six months from the date for filing a certiorari petition (unless the petitioner alleges facts showing that the delay was not due to his culpable negligence). 725 ILL. COMP. STAT. 5/122-1(c). State remedies are exhausted when claims have been presented to the highest state court for ruling on the merits, or when the claims could not be brought in state court because no remedies are available at the

## A. Claims 3, 4, and 5

Petitioner concedes that claims 3 and 4 were not raised in the PLA, but attributes these omissions to ineffective assistance of appellate counsel. As such, in order to resolve claims 3 and 4, I must consider claim 5. Procedurally defaulted claims can only be considered if petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). The cause and prejudice test has been codified in § 2254, which provides that where a petitioner has failed to develop a factual basis for his claim in state court proceedings, a federal court cannot hold an evidentiary hearing unless the petitioner shows that (1) the claim relies on a new, retroactive constitutional rule or a "factual predicate that could not have been previously discovered through the exercise of due diligence"; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder could have found the

---

time of the filing of the federal petition. *Farrell*, 939 F.2d at 410-11 (concluding petitioner exhausted state remedies through latter circumstance). Here, petitioner appealed his conviction directly to the state appellate court, filed a petition for leave to appeal to the state supreme court, and did not petition the United States Supreme Court for a writ of certiorari. Petitioner did not file a post-conviction petition in state court, and the time for doing so has expired.

12

applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A) & (B); *see also Speitzer v. Schomig*, 219 F.3d 639, 648 n.1 (7th Cir. 2000) (explaining that subsection (e)(2) codified the "cause and prejudice" test for procedurally defaulted claims). In the absence of cause and prejudice, petitioner must show a fundamental miscarriage of justice by demonstrating that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 314-15, 327 (1995).

Attorney error that constitutes ineffective assistance of counsel is cause for procedural default. *See Anderson v. Cowan*, 227 F.3d 893, 900-01 (7th Cir. 2000) (citing *Coleman*, 501 U.S. at 753-54). In the absence of a constitutional right to post-conviction appellate counsel, however, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman,* 501 U.S. at 752 (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) (explaining that where there is no constitutional right to counsel there can be no deprivation of effective assistance)). A criminal defendant does not have a constitutional right to counsel for discretionary state appeals. *Anderson*, 227 F.3d at 901 (citing *Wainwright*, 455 U.S. at 587). The right to counsel extends only to the first appeal of right. *Id.* (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Petitioner cannot claim constitutionally ineffective assistance of

13

counsel in proceedings in which he does not have a constitutional right to counsel. *Id.* (citing *Coleman*, 501 U.S. at 752-53). Therefore, petitioner must "bear the risk of attorney error that results in a procedural default." *Coleman*, 501 U.S. at 752-53.

Petitioner had no constitutional right to counsel for the discretionary petition to the Supreme Court of Illinois, and therefore could not have received ineffective assistance of counsel for failing to raise certain issues therein. *See Anderson*, 227 F.3d at 901. Accordingly, petitioner has not shown cause for the failure to raise claims 3 and 4 through one full round of state court review, and, as such, I need not consider prejudice. Thus, claims 3 and 4 have been procedurally defaulted. *See id.* Moreover, claim 5 fails to provide an independent basis for relief because petitioner has not shown the denial of a constitutional right. *See id.*

### B. Claim 1

Petitioner claims that the trial court erred in applying the Illinois rape shield statute to preclude defense counsel from cross-examining the victim about a previous sexual assault complaint. Specifically, petitioner contends that because the police were unable to contact the victim at her home address in following up on the investigation of the prior complaint, the defense should have been permitted to cross-examine her about that incident in order to show a prior false claim of sexual assault.

14

(Pet. at 13-14.) Petitioner argues that, in precluding the cross-examination, the trial court failed to consider the second exception to the rape shield statute, which permits the admission of evidence of the victim's prior sexual activity or reputation when constitutionally required. (Id. at 14, citing 725 Ill. Comp. Stat. 5/115-7.a.) Petitioner does not elaborate on the significance of the failure to consider this exception, but, interpreting the petition generously, I conclude that claim 1 alleges that the Illinois rape shield statute was applied in a manner that violated petitioner's Sixth Amendment right to be confronted by the witnesses against him.

The appellate court addressed this claim, and its conclusion was not contrary to or an unreasonable application of federal law. The appellate court acknowledged a defendant's Sixth Amendment confrontation clause rights, citing the decision of the Supreme Court of the United States *Olden v. Kentucky* (as well as Illinois Supreme Court case law). *Davis*, 337 Ill. App. 3d at 984, 787 N.E.2d at 218 (citing *Olden*, 488 U.S. 227, 231 (1988) (concluding that state appellate court violated defendant's Sixth Amendment rights by preventing certain cross-examination of complainant)). The appellate court explained that, "A defendant's constitutional right to cross-examine a witness is not defeated by the [rape shield] statute where the evidence of a victim's past sexual conduct is relevant and tends to establish bias, motive, or prejudice." *Id.* at

15

985, 787 N.E.2d at 219 (citing *People v Sandoval*, 135 Ill.2d 159, 174-75, 552 N.E.2d 726 (1990)). Ultimately, the appellate court concluded that, regardless of whether evidence of the first incident was protected by the rape shield statute, petitioner was unable to prove its relevance. *Id.* at 986, 787 N.E.2d at 220. The appellate court found that the victim's failure to follow up on the prosecution of the prior complaint neither established its falsity nor related to whether she consented to sex with petitioner, and petitioner did not allege any motive for the victim to make a false complaint against him. *Id.* The Illinois appellate court addressed the right issue, and arrived at a reasonable conclusion. *See Dunlap v. Hepp*, 436 F.3d 739, 741-45 (7th Cir. 2006) (concluding Wisconsin Supreme Court decision finding petitioner's confrontation and compulsory process rights[8] not violated where cross-examination of witness regarding statement made by another contained in witness' report was excluded was not unreasonable application of established law, and noting "highly significant factor" was that state court

---

[8]The opinion explains that the parties agreed that the governing Supreme Court precedent was found in *Chambers v. Mississippi*, 410 U.S. 284 (1973) and *Davis v. Alaska*, 415 U.S. 308 (1974), and that the state court decision upon which the Wisconsin supreme court relied rested on *Chambers* and *Davis v. Alaska* in recognizing that sometimes a defendant's confrontation and compulsory process rights may require the admission of evidence of a complainant's prior sexual conduct notwithstanding the protection of the rape shield law. *Dunlap*, 436 F.3d at 742. As in *Dunlap*, the cases relied on by the Illinois appellate court rested on *Davis v. Alaska*. *See Olden*, 488 U.S. at 231; *Sandoval*, 135 Ill.2d at 173-74, 552 N.E.2d 732-33.

16

"recognized that its rape shield law must yield if it would deprive a defendant of his constitutional rights."); *Hammer v. Karlen*, 342 F.3d 807, 809, 811-12 (7th Cir. 2003) (finding Wisconsin Supreme Court's application of rape shield statute to preclude cross-examination of victims regarding their sexual activities did not involve unreasonable application of United States Supreme Court precedent[9] that deprived petitioner of Sixth Amendment rights to confrontation and compulsory process).

## C.  Claim 2[10]

Petitioner claims the evidence was insufficient to prove him guilty beyond a reasonable doubt because the victim's testimony was not credible and the corroborating evidence on which the trial judge relied - the photographs of her injuries and her hysterical demeanor as witnessed by the police and her employer - did not establish petitioner committed the crime. (Pet. at 15-16.)  The appellate court identified the correct standard for evaluating petitioner's sufficiency claim. *See Davis*, 377 Ill. App. 3d at 987,

---

[9]The opinion acknowledges that the cases cited by the petitioner - *Davis v. Alaska*, *Olden*, and *Chambers* - recognize the importance of cross-examination and presentation of favorable witnesses in securing Sixth Amendment rights, but do not establish an absolute right to either. *Hammer*, 342 F.3d at 811.

[10]Although the petition states this ground was not raised in the PLA, respondent does not argue that it has been procedurally defaulted.  In fact, claim 2 overlaps with the second issue raised in the PLA because both are based on arguments that the victim lacked credibility and the evidence failed to show petitioner committed the crime.

17

787 N.E.2d at 220 (citing Illinois case law). In reviewing the sufficiency of the evidence, the court inquires "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Petitioner cites a statement made by the trial judge that he did not rely solely on the victim's testimony "because frankly, if it was just her testimony that [he] had to rely on, both defendants would probably be found not guilty." (Pet. at 15.) Petitioner made this same point in its brief to the appellate court. (*See* Resp. Ex. B at 30.) In its response brief to the appellate court, the state also cited the record, indicating that the trial court stated that it considered conflicts in the victim's testimony, her testimony was consistent and believable, and her testimony was corroborated by the photographs of her injuries and her immediate hysterical reaction. (*See* Resp. Ex. C at 21, 36). The state's response also cited a statement made by the trial judge that he "may have said a lot of things about [the victim's] testimony, but having misgivings was not one of the things that [he] said." (*Id.* at 39.) The appellate court explained that the testimony of a single credible witness is sufficient to convict a defendant, and the trial judge

18

"specifically found the victim's testimony to be credible." *Davis*, 377 Ill. App. 3d at 987, 787 N.E.2d at 220.

Further, the appellate court set forth evidence corroborating the victim's testimony. This evidence included: that testimony regarding the victim's injuries was corroborated by photographs; several witnesses testified that she was crying and appeared distraught; her clothes were torn, her face appeared bloody, and she screamed when she saw the defendants from the ambulance; a baseball bat and condoms were retrieved from the apartment; and forensic evidence revealed petitioner's DNA and the victim's DNA were found on two of those condoms. *Id.*, 787 N.E.2d at 221. The victim testified that she had several opportunities to see petitioner's face, and she identified him shortly after the incident and at trial. *Id.* The appellate court rejected the argument that the DNA evidence was suspect because the condoms contained other unidentified people's DNA and Davis' DNA was not found on the vaginal swabs from the victim, concluding that the DNA evidence was consistent with the victim's account. *Id.*

The appellate court's decision was not contrary to or an unreasonable application of federal law. It identified and applied the correct legal standard, as well as facts sufficient to support petitioner's guilty beyond a reasonable doubt. Taking all these facts in the best light to the prosecution, petitioner's sufficiency claims must fail as the victim's testimony was not

found to lack credibility, and there was sufficient corroborating evidence of petitioner's guilt.

IV.

For the above reasons, I deny Davis' petition for a writ of habeas corpus.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 13 , 2008